[No. 24352-4-III.   Division Three.   December 19, 2006.]

*In the Matter of the Personal Restraint of* RANDALL HOWARD REED, *Petitioner.*

*William D. Edelblute*, for petitioner.

*John G. Wetle, Prosecuting Attorney for Stevens County*, for respondent.

¶1 KULIK, J. — Randall Howard Reed seeks relief from personal restraint imposed for his 1973 Stevens County conviction upon plea of guilty to two counts of second degree murder. The dispositive question is whether the rationale of *In re Personal Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002) (assault may not serve as predicate crime for second degree felony murder),[1] applies to second degree felony murder crimes predicated on assault under the predecessor felony murder statute, former RCW 9.48.040(2) (1909), *repealed by* LAWS OF 1975, 1st Ex. Sess., ch. 260 § 9A.92.010(126). We are bound by precedent to answer in the negative. No exception to the one-year time bar applies here; we therefore dismiss Mr. Reed's petition as untimely under RCW 10.73.090(1).

---

[1] Following the *Andress* decision, the legislature amended the second degree felony murder statute, effective February 12, 2003, to expressly declare that assault is included among the predicate crimes under the second degree felony murder statute. LAWS OF 2003, ch. 3, § 2.

## FACTS

¶2 Mr. Reed was initially charged with two counts of first degree murder under former RCW 9.48.030 (1909), *repealed by* LAWS OF 1975, 1st Ex. Sess., ch. 260 § 9A.92.010(125), for the 1973 killing of LaDonna Ann Eddleman and Nickie Lu Eddleman. The information's charging language for each count was identical except for victim name. Count I stated:

> That . . . RANDALL HOWARD REED, on or about the 26th day of June, 1973, in the County of Stevens . . . State of Washington . . . did then and there wilfully, unlawfully and feloniously, and without excuse or justification, and with a premeditated design to effect the death of LaDonna Ann Eddleman . . . assault [her] with a knife and did inflict upon [her] mortal wounds, from which wounds [she] died.

Information.

¶3 Mr. Reed pleaded guilty to an amended information charging two counts of second degree murder under former RCW 9.48.040. The statute provided:

> The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when
>
> (1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or
>
> (2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in [former] RCW 9.48.030 [robbery, rape, burglary, larceny or arson in the first degree].

Former RCW 9.48.040.

¶4 The amended information cited former RCW 9.48.040 but did not specify whether the crimes were committed under either subsection (1) or (2). The charging language in each count was again identical except for victim name. Count I stated:

> That . . . RANDALL HOWARD REED, on or about the 26th day of June, 1973, in the County of Stevens, State of Washington, *without premeditated design to effect the death of* one LaDonna

Ann Eddleman . . . *did wilfully, unlawfully and feloniously*. . . *assault* [her] *with a knife, thereby mortally wounding* [her], of which said wounds [she] languished and died.

Am. Information (emphasis added).

¶5 Mr. Reed's written statement on plea of guilty did not recite former RCW 9.48.040, but stated instead that he pleaded guilty to second degree murder "as charged in the information." His personal statement regarding the crime provided: "I, Randall Howard Reed, for reasons that are not clear to me, took the lives of two human beings in Stevens County, Washington." Statement of Def. on Plea of Guilty. The judgment document also did not recite the statute. The judgment document stated only that Mr. Reed pleaded guilty to two counts of second degree murder "as charged in the Amended Information on file herein." J. and Sentence.

¶6 Mr. Reed received concurrent sentences of up to life in prison. He filed this petition in July 2005, and we appointed counsel on his behalf. His primary contention is that his convictions under former RCW 9.48.040 are for a nonexistent crime of second degree felony murder predicated upon assault. Therefore, he claims the judgment and sentence is invalid on its face and his convictions must be vacated.

## REVIEW STANDARDS

¶7 A personal restraint petition filed more than one year after the judgment becomes final is barred by RCW 10.73.090(1) unless the judgment and sentence is invalid on its face or the petition is based solely on one or more of the six exceptions stated in RCW 10.73.100. To obtain relief in a timely-filed personal restraint petition, the petitioner must show actual and substantial prejudice resulting from alleged constitutional errors or, for alleged nonconstitutional errors, a fundamental defect that inherently results in a miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). A petitioner is entitled to relief due to constitutional error if a judgment is facially invalid because it shows conviction for

a nonexistent crime. *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 860, 100 P.3d 801 (2004). The facial validity question is determined by examining the content of the judgment and sentence and related documents such as charging instruments and guilty plea statements. *Id.* at 858.

## ANALYSIS

### 1. Crime for which Mr. Reed was convicted

¶8 Mr. Reed first contends that the relevant documents show he was charged and convicted solely of second degree felony murder predicated upon assault, rather than second degree intentional murder. He contends that under either a plain language or a liberal construction of the amended information, nothing in the document alleges that he acted with the "intent" or "design" mens rea necessary for second degree intentional murder. Instead, the amended information alleges Mr. Reed perpetrated assaults which caused mortal wounds, consistent with felony murder predicated on assault.

¶9 The State responds that Mr. Reed was clearly charged under the intent alternative of second degree murder because none of the key words for felony murder (including "perpetrated") were used in the amended information. The State argues the initial information charged first degree murder by intent because the prosecutor alleged the killings were "with a premeditated design." The State asserts the amended information alleging the murders were committed "without premeditated design" simply removed the premeditation element to make the charge murder in the second degree. We disagree with the State.

¶10 The amended information language *"without premeditated design to effect the death"* removed the premeditation element required for first degree murder, but at the same time did not affirmatively restate or reallege the "design" or "intent" mens rea element required for second degree murder under former RCW 9.48.040(1). The opera-

tive affirmative charging language is that Mr. Reed *"did wilfully, unlawfully and feloniously . . . assault* [each victim] *with a knife, thereby mortally wounding* [her]."* In other words, Mr. Reed killed each victim during commission of a knife assault.

¶11 This language on its face charges solely second degree felony murder because no mens rea element rising to the level of "intent" is affirmatively alleged. The other related documents support that conclusion. Mr. Reed did not admit to intentional murder in his written guilty plea statement. Nor does the judgment and sentence document reference intentional murder—only the crimes "as charged in the Amended Information." J. and Sentence.

¶12 This is in contrast to recent cases in which the petitioners were affirmatively charged and pleaded guilty under *both* the intent *and* felony murder alternatives of RCW 9A.32.050. *See In re Pers. Restraint of Fuamaila*, 131 Wn. App. 908, 131 P.3d 318 (2006); *In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 117 P.3d 353 (2005). In each of those cases, the felony murder basis for the convictions was nullified under *Andress*, 147 Wn.2d 602, but the guilty pleas to intentional murder under RCW 9A.32.050(1)(a) were valid and the convictions were upheld. *See also State v. Bowerman*, 115 Wn.2d 794, 799, 802 P.2d 116 (1990) (when information alleges alternate means of committing a crime, defendant's right to plead guilty is limited to the crime as charged and does not include right to plead guilty to only one alternative means).

¶13 Mr. Reed acknowledges that charging documents challenged for the first time following conviction are to be liberally construed—here in favor of a valid intentional murder charge. *See State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991). He also concedes the term "assault" by itself implies intent. *See State v. Hopper*, 118 Wn.2d 151, 159, 822 P.2d 775 (1992). But as he further explains, that reading provides the requisite mental state only for *assault* and did not place him on notice that the charge was for intentional *killing*. Thus, even a liberal construction of the

amended information does not aid the State's intentional murder argument. And Mr. Reed is prejudiced if he was convicted of a nonexistent crime. *Hinton*, 152 Wn.2d at 860.

¶14 We conclude based upon the language of the amended information, guilty plea statement, and judgment and sentence documents that Mr. Reed was charged and convicted solely of second degree felony murder predicated upon assault.

### 2. Applicability of Andress *to former RCW 9.48.040(2)*

¶15 Mr. Reed contends that the rationale of *Andress*, 147 Wn.2d 602, that assault may not serve as the predicate crime for second degree felony murder under former RCW 9A.32.050(1)(b) (1976),[2] should also apply to second degree felony murder crimes predicated on assault under former RCW 9.48.040(2) and thus nullify his conviction for a nonexistent crime.

¶16 In *Andress*, the court adopted the "merger rule" that assault cannot be the predicate crime for felony murder because it is not a felony independent of the homicide. The court explained that its prior decisions rejecting the merger rule involved the predecessor statute, former RCW 9.48-.040(2), which did not contain the new "in furtherance of" language present in the amended statute, former RCW 9A-.32.050(1)(b). *Andress*, 147 Wn.2d at 606-08. In holding that the legislature could not have intended the strained result that assault is a predicate for second degree felony murder under former RCW 9A.32.050(1)(b), the court reasoned it is nonsensical to speak of an assault that results in death as being part of the res gestae of that same criminal act.

---

[2] The statute provided in relevant part:

(1) A person is guilty of murder in the second degree when:

(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; or

(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and *in furtherance of* such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants.

Former RCW 9A.32.050(1) (emphasis added).

This follows because the conduct constituting the assault is directly linked to and not independent of the homicide. Therefore, if assault were encompassed within the unenumerated felonies in former RCW 9A.32.050(1)(b), the "in furtherance of" language would be meaningless as to that predicate felony. The court concluded this new language, in conjunction with undue harshness to defendants in using assault as the predicate for second degree felony murder,[3] is strong indication that the legislature did not intend that assault should serve as a predicate felony under the 1976 version of the statute. *Andress*, 147 Wn.2d at 610-11, 615-16.

¶17 In *Hinton*, the court clarified that *Andress* applies to anyone convicted of second degree felony murder predicated on assault under former RCW 9A.32.050. Such a conviction is for a nonexistent crime and is not a conviction at all, thus rendering the judgment and sentence invalid on its face. *Hinton*, 152 Wn.2d at 857.

¶18 Mr. Reed's argument is that the *Andress* decision was not based solely upon the amended statutory language, and the real concern is that the logical requirement that a crime independent and apart from the death has occurred. This is not the case with any second degree felony murder predicated on assault. Mr. Reed contends there is no material distinction between the requirement in former RCW 9.48.040(2) that the killing take place "in the commission of" a felony, and the requirement in former RCW 9A.32.050 that the killing take place "in the course of and in furtherance of such crime."

¶19 Our Supreme Court has repeatedly rejected the merger rule as applied to former RCW 9.48.040(2). *See State v. Wanrow*, 91 Wn.2d 301, 588 P.2d 1320 (1978); *State v. Thompson*, 88 Wn.2d 13, 558 P.2d 202 (1977); *State v.*

---

[3] The court gave several examples illustrating the harshness of allowing assault to be used as a predicate felony. One example is that the State can elect to charge second degree felony murder predicated upon assault to avoid having to establish intent to kill in a case where the defendant's level of intoxication may make it difficult to prove the requisite intent for second degree intentional murder. *See Andress*, 147 Wn.2d at 612-14.

*Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966). The *Andress* court did not purport to overrule those cases. And neither the *Andress* nor the *Hinton* holding was based upon interpretation of former RCW 9.48.040.

¶20 The law is well settled that the legislature is deemed to acquiesce in the court's interpretation of a statute if no change is made for a substantial time after the decision. *See Buchanan v. Int'l Bhd. of Teamsters*, 94 Wn.2d 508, 511, 617 P.2d 1004 (1980). In addition, "[i]t is a fundamental rule of statutory construction that once a statute has been construed by the highest court of the state, that construction operates as if it were originally written into it." *Johnson v. Morris*, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976).

¶21 With regard to merger, the *Harris* court stated:

> In Washington, the felony murder must occur in the commission of, an attempt to commit, or in withdrawing from the scene of a felony, and must *not* be separate, distinct, and independent from it. *State v. Diebold*, 152 Wash. 68, 277 [P.] 394 (1929). Our legislature further avoided the merger problem by specifically designating the felonies which result in a first or second-degree felony murder charge. Since an assault felony comes within the ambit of second-degree murder, the state must prove intent and premeditation in order to secure a first-degree murder conviction. Thus the rationale behind the New York merger rule is not applicable in Washington.

*Harris*, 69 Wn.2d at 933.

¶22 The legislature did not amend former RCW 9.48-.040(2) following *Harris*. This was despite the court's statement, "[i]f a change in the statutes is desirable, it should be made by the legislature and not accomplished by the court's adoption of the . . . merger rule." *Harris*, 69 Wn.2d at 935 n.7. Indeed, no pertinent change was made to former RCW 9.48.040(2) for its remaining life, until it was replaced by RCW 9A.32.050(1)(b), effective July 1, 1976. *See* LAWS OF 1975, 1st Ex. Sess. ch. 260, § 9A.32.050. And the Supreme Court adhered to the *Harris* nonmerger interpretation of former RCW 9.48.040(2) in both *Thompson* and *Wanrow*. *See Thompson*, 88 Wn.2d at 17-18 (rejection by court of

merger rule unchallenged by legislature during nearly 10 years since *Harris*); *Wanrow*, 91 Wn.2d at 308-09 (court declined to apply merger doctrine in view of clear legislative intent that second degree felony murder can be predicated upon assault).

¶23 Thus, consistent with the Supreme Court and the legislature, the crime of second degree felony murder predicated upon assault *did exist* under former RCW 9.48.040(2). *See Thompson*, 88 Wn.2d at 17 (felony murder statute relieves prosecution of burden of proving intent to commit murder). In this situation, *Harris*, *Thompson*, and *Wanrow* remain controlling law as applied to former RCW 9.48-.040(2). This court is bound to follow that precedent in Mr. Reed's case. *See State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). We decline to infer from the Supreme Court's holding in *Andress* with respect to the intent of the 1975 legislature that it would reach the same conclusion as to legislative intent for former RCW 9.48.040(2).

¶24 We conclude that Mr. Reed was validly convicted of two counts of second degree murder. His judgment and sentence for those crimes evinces no facial invalidity; he thus shows no constitutional error. And no exception to the one-year time bar in RCW 10.73.090(1) applies here. Former RCW 9.48.040(2) was never ruled unconstitutional, Mr. Reed has not received an illegal sentence, and the intervening case *Andress* did not purport to overrule prior applicable case law. *See* RCW 10.73.100(2), (5), (6).

¶25 Accordingly, the petition is dismissed as time-barred under RCW 10.73.090(1).

SWEENEY, C.J., and SCHULTHEIS, J., concur.