Bjorgen, J.
¶ 1 Adrian Contreras-Rebollar appeals from the sentence imposed following his resentencing hearing, asserting that the sentencing court erred by imposing a $200 criminal filing fee as a mandatory legal financial obligation (LFO). In his statement of additional grounds for review (SAG), Contreras-Rebollar also contends that (1) the sentencing court lacked authority to resentence him under RAP 7.2(e), (2) the judge presiding over his resentencing hearing violated Code of Judicial Conduct(3)(D)(1) (CJC) and the appearance of fairness doctrine by denying *511 his recusal motion, (3) the community custody provisions of RCW 9.94A.701 as applied to his sentence violate the constitutional prohibition on ex post facto laws, and (4) the sentencing court's finding that he was on community custody during his offense violated his jury trial right.
¶ 2 In the published portion of this opinion, we hold that the sentencing court had the authority to resentence Contreras-Rebollar under RAP 7.2(e), but that it violated the constitutional prohibition against ex post facto laws by imposing a fixed 36-month community custody term under RCW 9.94A.701. In the unpublished portion we hold against Contreras-Rebollar's other challenges to his sentence.
¶ 3 Therefore, we vacate the community custody portion of Contreras-Rebollar's sentence and remand for imposition of a community custody term consistent with the law in effect when he committed his offenses. We affirm the remainder of his sentence.
FACTS
¶ 4 In February 2007, Contreras-Rebollar was convicted of two counts of first degree assault and one count of second degree unlawful possession of a firearm. In Contreras-Rebollar's first appeal of his 2007 convictions and sentence, we held in an unpublished opinion that the State failed to present sufficient evidence at sentencing supporting its allegations of Contreras-Rebollar's criminal history and community custody status at the time of his offenses. State v. Contreras-Rebollar , noted at 149 Wash. App. 1001 (2009). Accordingly, we reversed Contreras-Rebollar's sentence and remanded for resentencing.
¶ 5 Following his 2010 resentencing, Contreras-Rebollar again appealed his sentence and also filed a personal restraint petition (PRP). State v. Contreras-Rebollar , noted at 169 Wash. App. 1001 (2012). In our unpublished opinion addressing both the direct appeal and PRP, we rejected Contreras-Rebollar's claim that the resentencing court's community custody finding violated his Sixth Amendment jury trial right. Contreras-Rebollar , noted at 169 Wash. App. 1001. However, we also held that
the record suggests that the resentencing court may not have taken into account any good time credit to which Contreras-Rebollar may have been entitled and that might have affected its determination of whether he had been on community custody at the time he committed the charged crimes.
Contreras-Rebollar , noted at 169 Wash. App. 1001, 2012 WL 2499369, at *8. We therefore again remanded for resentencing, directing the State to "put on the record all facts pertinent to Contreras-Rebollar's community custody status at the time he committed the charged crimes, including any good time credit calculation to which he may have been entitled." Contreras-Rebollar , 2012 WL 2499369, at *8.
¶ 6 Contreras-Rebollar was again resentenced on March 1, 2013. However, the sentencing court did not have authority to resentence Contreras-Rebollar on that date because we had not yet issued the mandate from our 2012 opinion. We issued our mandate from the 2012 opinion on August 15, 2013. Contreras-Rebollar filed a supplemental PRP, which we denied in an unpublished opinion in 2014. State v. Contreras-Rebollar , No. 41672-7-II, slip op at 182 Wash. App. 1046, 2014 WL 3859584 (Wash. Ct. App. Aug. 5, 2014). We issued the mandate from our 2014 unpublished opinion on January 9, 2015.
¶ 7 The sentencing court again resentenced Contreras-Rebollar in April 2016, which resentencing is the subject of his current appeal. Following the 2016 resentencing hearing, the sentencing court found that Contreras-Rebollar was on community custody at the time that he committed his offenses. The sentencing court stated that it would impose as LFOs a $500 crime victim penalty assessment, a $100 DNA (deoxyribonucleic acid) testing fee, and a $200 criminal filing fee. Defense counsel requested the sentencing court to waive the $200 criminal filing fee based on Contreras-Rebollar's inability to pay the fee, asserting that it was within the sentencing court's discretion to do so. The sentencing court rejected defense counsel's *512 request and thereafter imposed the above LFOs and the same 380-month incarceration term as it had imposed in 2007. The court also imposed a fixed community custody term of 36 months. Contreras-Rebollar appeals from his sentence.
ANALYSIS
I. RAP 7.2 AND PRPS
¶ 8 Contreras-Rebollar argues that the sentencing court lacked authority to resentence him under RAP 7.2because he had a PRP pending with our court on the date of his resentencing. Because the filing of a PRP does not divest the superior court of its authority to act in a case under RAP 7.2, we disagree.
¶ 9 RAP 7.2 provides in relevant part:
After review is accepted by the appellate court, the trial court has authority to act in a case only to the extent provided in this rule, unless the appellate court limits or expands that authority as provided in rule 8.3.
....
.... The trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. A party should seek the required permission by motion.
(Emphasis added.)
¶ 10 In a colloquial sense of the word, an appellate court considering a PRP may be said to "review" a trial court's decision. However, RAP 7.2 is clear that it is confined to situations where review has been "accepted" by the appellate court. Title 6 of the RAPs provides three methods through which our court "accepts review" of a trial court's or administrative agency's decision. RAP 6.1 states that "[t]he appellate court 'accepts review' of a trial court decision upon the timely filing in the trial court of a notice of appeal from a decision which is reviewable as a matter of right." RAP 6.2 also allows appellate court review of a trial court decision in some circumstances by granting a motion for discretionary review. Finally, RAP 6.3 provides that "[t]he appellate court accepts direct review of a final decision of an administrative agency in an adjudicative proceeding ... by entering an order or ruling accepting review." None of these provisions speak to the acceptance of review of a PRP.
¶ 11 A PRP, in contrast, constitutes an original action in the appellate court. RAP 16.1. Although an appellate court conducts a "preliminary review" on receipt of a PRP and may dismiss a PRP in some circumstances, there is no threshold requirement that the appellate court accept review in order to proceed. RAP 16.8.1.
¶ 12 Read together, RAP Titles 6 and 16 leave no room for quibble: a PRP proceeds without the need for acceptance of review by the appellate court. With that, the filing of a PRP does not divest the trial court of authority to act in a case under RAP 7.2. Contreras-Rebollar's argument to the contrary fails.
II. RCW 9.94A.701 AND EX POST FACTO LEGISLATION
¶ 13 Next, Contreras-Rebollar argues that the sentencing court's application of RCW 9.94A.701 to impose a fixed 36-month community custody term violated the constitutional prohibition on ex post facto laws. The State concedes that remand for a correction of Contreras-Rebollar's sentence is required if we concur with the opinion of Division Three of our court in State v. Coombes , 191 Wash. App. 241, 361 P.3d 270 (2015), review denied , 185 Wash.2d 1020, 369 P.3d 500 (2016). We agree with the reasoning in Coombes and accept the State's concession.
¶ 14 We review de novo whether the sentencing court had statutory authority to impose community custody conditions.
*513 Coombes , 191 Wash. App. at 249, 361 P.3d 270. We also review alleged violations of the constitutional prohibition on ex post facto laws de novo. Coombes , 191 Wash. App. at 250-51, 361 P.3d 270.
¶ 15 The United States Constitution and the Washington State Constitution prohibit ex post facto laws. U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. "A law that imposes punishment for an act that was not punishable when committed or increases the quantum of punishment violates the ex post facto prohibition." In re Pers. Restraint of Hinton , 152 Wash.2d 853, 861, 100 P.3d 801 (2004). To succeed in his claim of an ex post facto violation, Contreras-Rebollar must show that RCW 9.94A.701(1) operates retroactively and (2) increases the level of punishment from that which he was subject to on the date he committed his offenses. Coombes , 191 Wash. App. at 251, 361 P.3d 270. We hold that Contreras-Rebollar has made both showings.
¶ 16 Coombes addressed a similar ex post facto challenge to RCW 9.94A.701. 191 Wash. App. at 249-53, 361 P.3d 270. On the retroactive prong of the ex post facto violation test, Coombes noted that the legislature had explicitly stated its intent that the statute
"applies retroactively and prospectively regardless of whether the offender is currently on community custody or probation with the department, currently incarcerated with a term of community custody or probation with the department, or sentenced after the effective date of this section."
191 Wash. App. at 251, 361 P.3d 270 (quoting LAWS OF 2009, ch. 375, § 20). As with the defendant in Coombes , RCW 9.94A.701 applies retroactively to Contreras-Rebollar because he committed his offenses before the legislature amended the statute.
¶ 17 In addressing the punishment prong of the ex post facto violation test, the Coombes court noted that "the applicable quantum of punishment increases when a statute makes a formerly discretionary punishment mandatory." 191 Wash. App. at 251-52, 361 P.3d 270 (citing Lindsey v. Washington , 301 U.S. 397, 401-02, 57 S.Ct. 797, 81 L.Ed. 1182 (1937) ). The Coombes court held that RCW 9.94A.701 increased the defendant's punishment because it provided for a fixed 36-month community custody term while the statute in effect when the defendant committed his crime provided for a discretionary range of 24 to 48 months of community custody. 191 Wash. App. at 252-53, 361 P.3d 270.
¶ 18 As in Coombes , the law in effect when Contreras-Rebollar committed his offenses provided for a discretionary 24 to 48 months' community custody term. Former RCW 9.94A.715(1) (2006) stated that a sentencing court shall "sentence the offender to community custody for the community custody range established under RCW 9.94A.850 or up to the period of earned release awarded pursuant to RCW 9.94A.728(1) and (2), whichever is longer." In addition, former RCW 9.94A.030(41)(a)(v) (2006) classified first degree assault as a serious violent offense, and former WAC 437-20-010 (2000) established a 24 to 48 month community custody range for serious violent offenses. In 2009, the legislature replaced this variable term of community custody with a fixed term of 36, 18, or 12 months, depending on the type of offense. See Coombes , 191 Wash. App. at 252, 361 P.3d 270. Contreras-Rebollar was sentenced under the current statute to a fixed 36-month term of community custody for his first degree assault convictions.
¶ 19 As in Coombes , the fixed term of community custody under the current form of RCW 9.94A.701 increased Contreras-Rebollar's punishment "because it changed a previously discretionary term to a mandatory term." 191 Wash. App. at 253, 361 P.3d 270. Accordingly, we hold that the community custody provision of RCW 9.94A.701 violated the constitutional prohibition against ex post facto laws as applied to Contreras-Rebollar's sentence. We therefore vacate the community custody portion of Contreras-Rebollar's sentence and remand for imposition of a community custody term consistent with the law in effect when he committed his offenses.
¶ 20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder *514 shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.
We concur:
Maxa, C.J.
Lee, J.